124 Wis.2d 238 (1985)
369 N.W.2d 162
IN the MATTER OF W.J.C., Adjudicated to be mentally ill:
W.J.C., Appellant,
v.
COUNTY OF VILAS, Respondent.[]
No. 84-966.
Court of Appeals of Wisconsin.
Argued February 27, 1985.
Decided April 9, 1985.
*239 For the appellant there were briefs and oral argument by John E. Tradewell, assistant state public defender.
For the respondent there was a brief and oral argument by R. Terry Hoyt, Vilas County district attorney, of Eagle River.
Before Cane, P.J., Dean and LaRocque, JJ.
LAROCQUE, J.
W.J.C. appeals an order involuntarily committing him for treatment, sec. 51.20, Stats. A psychiatrist and a psychologist testified by telephone at the commitment hearing. Because W.J.C.'s due process rights were not violated by allowing the examining physicians to testify by telephone, we affirm the order.
W.J.C. was represented by counsel at the jury trial. W.J.C.'s parents and the two doctors testified. His parents testified in person concerning his behavior. Over W.J.C.'s objection, the doctors testified by telephone, under oath. Each doctor had filed a report with the court detailing his opinion of W.J.C.'s mental condition. The six-person jury found W.J.C. to be mentally ill, dangerous to himself or others, and a proper subject for treatment.
Because W.J.C. has been released from his six-month commitment, the case is moot. Generally, a case is moot when the decision sought by the parties cannot have any practical legal effect upon a then existing controversy. State ex rel. Watts v. Combined Community Services *240 Board, 122 Wis. 2d 65, 362 N.W.2d 104 (1985). Although the case is moot, we address the issue of telephone testimony. It will likely arise again yet evade review because the appellate process cannot be completed within a time that would result in a practical legal effect upon the parties. See id.
W.J.C. argues that in a sec. 51.20 hearing, he has the right to confront the witnesses against him, including a face-to-face confrontation before the jury. Because this is a civil proceeding, however, no independent right to confront witnesses exists under the Wisconsin and United States Constitutions. The issue of telephone testimony at ch. 51 hearings is therefore essentially a challenge to the procedures used to involuntarily commit an individual. These procedures must conform to the essentials of due process. Section 51.20 (5), Stats.
The approach for analyzing a procedural due process claim is set out in Mathews v. Eldridge, 424 U.S. 319 (1976). The test involves balancing three factors: 1) The private interest affected by the official action, 2) the risk of erroneous deprivation of the interest through the procedures used and the probable value of additional or substitute procedural safeguards, and 3) the government's interest. Id. at 335. The Mathews approach is appropriate to analyze the validity of a state's mental commitment procedure under a procedural due process challenge. Parham v. J.R., 442 U.S. 584, 599-600 (1979).
We recognize that W.J.C. has a substantial liberty interest at stake. He faces a "massive curtailment" of his rights. See Humphrey v. Cady, 405 U.S. 504, 509 (1972). He loses his freedom for up to six months and suffers the social stigma attached to being involuntarily committed to a mental institution. W.J.C.'s interests, however, are ultimately served if he is in fact a proper subject for treatment.
The use of telephone testimony poses only a slight risk that W.J.C. will be erroneously deprived of his *241 liberty. The jury is unable to visually observe the doctor's demeanor when he testifies by telephone. This inability to visually observe the doctor might arguably cause the jury to err in finding the facts. The content of the doctors' testimony is essentially medical in character: Whether the individual is mentally ill and whether he is a proper subject for treatment. See Parham, 442 U.S. at 609-10.
The probable value of requiring the doctors to be physically present in the courtroom to testify is minimal. These witnesses are court-appointed examining physicians. See sec. 51.20 (9), Stats. They are qualified as independent experts and by statute may neither be related to the individual by blood or marriage nor have an interest in the individual's property. See id.
The government has several interests at stake. Like W.J.C., it is interested that the jury correctly find the facts. The government wants to protect the community from dangerous, mentally ill individuals, see Addington v. Texas, 441 U.S. 418, 426 (1979), while confining the use of costly mental commitment facilities to only those individuals who are proper subjects for mental health treatment. See Parham, 442 U.S. at 604-05 (2505). From the record, it is difficult to determine the fiscal and administrative burdens that in-court testimony, the alternative to telephone testimony, would entail. The court can take judicial notice, however, that the costs of securing experts, especially from another area, are considerable.
Our balancing of the Matthews factors leads us to conclude that permitting ch. 51.20(9) examining physicians to testify by telephone did not violate W.J.C.'s due process rights. The first factor, the nature of the interest at stake, weighs heavily in W.J.C.'s favor. The other factors, however, weigh in favor of permitting telephone testimony. Telephone testimony poses only a *242 slight risk to the correctness of the jury's fact finding. The only aspect of the fact finding process lost by telephone testimony is the jury's ability to observe the doctor's demeanor. Given the doctors' neutrality, the probable value of in-court testimony does not justify the fiscal and administrative burdens in-court testimony would impose. We therefore affirm the order committing W.J.C.
By the Court.Order affirmed.
CANE, P.J. (concurring).
I agree with the majority that telephone testimony is admissible in involuntary commitment hearings. I write separately, however, to emphasize the constitutional distinction between criminal actions and civil commitment proceedings. For purposes of due process analysis, a civil commitment proceeding cannot be equated to a criminal prosecution. Addington v. Texas, 441 U.S. 418, 428 (1979); see also Milwaukee County v. Parham, 95 Wis. 2d 21, 25, 289 N.W.2d 326, 328 (Ct. App. 1979).
A civil commitment constitutes a significant deprivation of liberty that requires due process protection. Addington, 441 U.S. at 425. The function of due process is to minimize the risk of erroneous decisions. See Mathews v. Eldridge, 424 U.S. 319, 335 (1976). The Constitution tolerates a higher threshold of error in commitment proceedings, however, than in criminal prosecutions. For example, the Constitution does not require proof "beyond a reasonable doubt" in order to commit an individual. Addington, 441 U.S. at 431. Wisconsin requires proof by clear and convincing evidence in commitment proceedings. Section 51.20(13) (e), Stats. The reasonable-doubt standard manifests concern that the risk of error to the individual be minimized at the risk that some who are guilty might go free. Addington, 441 U.S. at 428. In Addington, however, the Supreme *243 Court stated that it is not much better for a mentally ill person to go untreated than for a mentally normal person to be committed. Id. at 429. While I agree, therefore, that the critical question in this case concerns the reliability of the decisionmaking procedures, reliability should not be evaluated against criminal standards.
Although telephone testimony by expert witnesses does not conform to the procedures used in criminal proceedings, it does not violate due process. In Parham v. J.R., 442 U.S. 584, 607 (1979), the Supreme Court held that a commitment decision can be made by a psychiatrist using informal medical investigative techniques. Although the psychiatrist must consult all sources of information traditionally relied on by physicians and behavioral specialists, the diagnostic procedure is a matter left to the decisionmaker. Id. at 608-09. Due process is not violated, therefore, by diagnostic procedures that do not rely exclusively on information derived from face-to-face confrontations.
The requirements of due process do not change simply because a judicial-type commitment hearing is held before a nonspecialist decisionmaker. A state may require a formal hearing before a judge or jury, although it is not constitutionally required to do so. Id. at 607. After a formal hearing, a judge or jury must make the same medical-psychiatric decision that the specialist makes. Id. at 609. No reason justifies requiring the nonspecialist to rely on evidence derived from face-to-face confrontations, while imposing no such requirement on the specialist.
The primary purpose of face-to-face confrontation is to insure that the trier of fact has a satisfactory basis for evaluating the truthfulness of evidence. State v. Bauer, 109 Wis. 2d 204, 208, 325 N.W.2d 857, 859-60 (1982). The commitment decision, however, is essentially a medical question that turns on the meaning of *244 facts interpreted by expert psychiatrists and psychologists. Parham, 442 U.S. at 609. The correctness of opinions formed by such experts does not raise a question of honesty or truthfulness. This is indicated by the Supreme Court's conclusion that such experts constitutionally may make the final commitment decision. Id. at 607. When a nonspecialist decisionmaker evaluates the testimony of psychiatric experts, therefore, truthfulness is not an issue. As a result, face-to-face confrontation of such experts does not serve any truth enhancing purpose. The state therefore did not violate W.J.C.'s constitutional or statutory due process rights.
NOTES
[] Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.