IN RE INTEREST OF S.B., ALLEGED TO BE A
MENTALLY ILL AND DANGEROUS PERSON.
STATE OF NEBRASKA, APPELLANT, V. S.B., APPELLEE.
639 N.W.2d 78

Filed February 8, 2002.   No. S-01-233.

Tamra L. Walz, Deputy Sarpy County Attorney, for appellant.

Thomas J. Garvey, Sarpy County Public Defender, and Gregory A. Pivovar for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
## NATURE OF CASE
The State of Nebraska appeals from the order of the district court for Sarpy County which reversed the order of the Sarpy County Mental Health Board and remanded the matter for further proceedings. The board had determined that S.B. was a mentally ill dangerous person and had committed him to inpatient psychiatric treatment at a regional center. We agree with the district court that the telephonic testimony of the mental health professional was improperly admitted and that without such testimony, the evidence was insufficient to support the commitment. We affirm the district court's reversal of the commitment order.

## STATEMENT OF FACTS

On July 19, 2000, the State filed a petition pursuant to the Nebraska Mental Health Commitment Act (Commitment Act), Neb. Rev. Stat. § 83-1001 et seq. (Reissue 1999 & Cum. Supp. 2000), specifically §§ 83-1024 to 83-1026, alleging, inter alia, that S.B. was a mentally ill, alcoholic, and/or drug-abusing person who was a danger to himself or others as a consequence of S.B.'s hearing voices and having a physical confrontation with his parents. Attached to the petition was a certificate indicating that S.B. had been taken into emergency protective custody. At a hearing on July 25, the board ordered a 90-day continuance of the proceedings on the petition to allow S.B. to seek voluntary psychiatric treatment.

On October 5, 2000, S.B. was taken into emergency protective custody and admitted to Methodist Richard Young Hospital as a result of his attempt to gain access to Offutt Air Force Base. On October 6, the State filed a motion to reinstate mental health board proceedings, alleging that S.B. was not complying with his voluntary outpatient chemical dependency treatment plan and seeking the reinstatement of the board proceedings which had been continued on July 25.

The State's motion came on for hearing on October 12, 2000, pursuant to § 83-1027, which requires that hearings under the Commitment Act be held within 7 days after a person has been taken into protective custody. S.B. was present at the hearing and represented by counsel. During the hearing, the State called as a witness Dr. Jerry Easterday, a psychiatrist who had been evaluating S.B. since his admission to Methodist Richard Young Hospital on October 5. Easterday did not appear in person at the hearing. Instead, over S.B.'s objection, Easterday was permitted to testify at the hearing telephonically via speaker telephone, after being identified by a notary public.

Easterday testified that S.B. was suffering from "schizophrenia, paranoid type, with acute exacerbation with a psychosis" and that S.B. was delusional, "displayed paranoia," and was experiencing "auditory hallucinations of a command type." Easterday further testified that S.B. refused to take his medication and, as a result, was a danger to himself. Easterday recommended antipsychotic medication and inpatient psychiatric

hospitalization at a regional center as the least restrictive treatment plan for S.B.

Counsel for S.B. cross-examined Easterday telephonically regarding his treatment of S.B. and his familiarity with S.B.'s mental illness. S.B. did not offer a second opinion to refute Easterday's testimony and did not present any evidence of his own.

After deliberations, the board issued an order on October 12, 2000, finding that S.B. was a mentally ill person, dangerous to himself. The order confined S.B. to the Norfolk or Hastings Regional Center for inpatient treatment and continuing evaluation.

On November 6, 2000, S.B. appealed the board's order to the Sarpy County District Court. The appeal came on for hearing on December 29. In an order filed January 26, 2001, the district court reversed the board's order, concluding that the admission of Easterday's telephonic testimony violated S.B.'s constitutional right to confront witnesses as provided in § 83-1058, which states as follows:

> The subject of a petition shall have the right at a hearing held under the Nebraska Mental Health Commitment Act to confront and cross-examine adverse witnesses and evidence equivalent to the rights of confrontation granted by Amendments VI and XIV of the Constitution of the United States and Article I, section 11, of the Constitution of Nebraska.

The district court found that there was no showing on the record that S.B. had waived his right to confrontation or agreed to the admission of telephonic testimony. The district court also found that the State had not offered evidence of a "compelling reason or need" for Easterday to appear telephonically rather than in person. The district court concluded that the board's admission of Easterday's testimony was in error. The district court further concluded that without Easterday's testimony, there was insufficient evidence in the record to establish S.B.'s mental illness and dangerousness. Accordingly, the district court determined that the board's October 12, 2000, commitment order was not properly supported by the evidence, and the court

reversed the board's commitment order and remanded the matter for further proceedings.

The State appeals from the district court's order.

## ASSIGNMENTS OF ERROR

On appeal, restated, the State has assigned two errors: (1) The district court erred in determining that the board had erred in admitting Easterday's telephonic testimony, and (2) the district court erred in reversing the board's commitment order which had found that S.B. was a mentally ill dangerous person and had ordered S.B. to participate in inpatient psychiatric treatment at a regional center.

## STANDARDS OF REVIEW

■ In reviewing a district court's judgment under the Commitment Act, appellate courts will affirm the district court's judgment unless, as a matter of law, the judgment is unsupported by evidence which is clear and convincing. *In re Interest of Tweedy*, 241 Neb. 348, 488 N.W.2d 528 (1992); *In re Interest of Rasmussen*, 236 Neb. 572, 462 N.W.2d 621 (1990).

■ Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *In re Guardianship & Conservatorship of Garcia*, 262 Neb. 205, 631 N.W.2d 464 (2001).

## ANALYSIS

*Procedures Under Commitment Act.*

The Commitment Act establishes certain procedures for civil commitment hearings. Pursuant to § 83-1024:

> Any person believing that any individual is a mentally ill dangerous person may communicate his or her belief to the county attorney. Should the county attorney concur that the individual is a mentally ill dangerous person and that neither voluntary hospitalization nor other treatment alternatives less restrictive of the subject's liberty than a mental-health-board-ordered treatment disposition are available or would suffice to prevent the harm described in section 83-1009, the county attorney shall cause a petition to be

drafted and acted upon as provided in the Nebraska Mental Health Commitment Act.

The Commitment Act refers to persons against whom such a petition has been filed as the "subject" of the petition. Section 83-1009 of the Commitment Act defines a "mentally ill dangerous person" as

> any mentally ill person, alcoholic person, or drug-abusing person who presents:
>
> (1) A substantial risk of serious harm to another person or persons within the near future as manifested by evidence of recent violent acts or threats of violence or by placing others in reasonable fear of such harm; or
>
> (2) A substantial risk of serious harm to himself or herself within the near future as manifested by evidence of recent attempts at, or threats of, suicide or serious bodily harm or evidence of inability to provide for his or her basic human needs, including food, clothing, shelter, essential medical care, or personal safety.

Pursuant to § 83-1020, if a person taken into police custody is believed to be a mentally ill dangerous person, he or she can be taken into protective custody and admitted to a treatment facility. Persons who are taken into protective custody must be evaluated by a "mental health professional," as that term is defined by § 83-1010, as soon as possible after being taken into protective custody, but not later than 36 hours after having been admitted. § 83-1023.

In accordance with § 83-1027, a hearing must be held on a petition filed pursuant to § 83-1024 within 7 days after the subject of the petition has been taken into protective custody. At the hearing, the subject "shall appear personally and be afforded the opportunity to testify in his or her own behalf and to present witnesses and tangible evidence in defending against the petition at the hearing." § 83-1056. Pursuant to § 83-1059, hearings held under the Commitment Act will follow the "rules of evidence applicable in civil proceedings"; however, "[i]n no event shall evidence be considered which is inadmissible in criminal proceedings." Compare *Kraemer v. Mental Health Board of the State of Nebraska*, 199 Neb. 784, 261 N.W.2d 626 (1978) (discussing § 83-1059 in context of Fifth Amendment right against

self-incrimination). Pursuant to § 83-1058, the subject of the petition has the right to confront and cross-examine adverse witnesses and evidence "equivalent" to the rights granted under the Confrontation Clauses of the federal and state Constitutions. Application of § 83-1058 determines the outcome of this case.

*Rights Under Confrontation Clauses and*
*Limitations on Use of Telephonic Testimony.*

Section 83-1058 refers to the Confrontation Clauses in the U.S. and Nebraska Constitutions. The Sixth Amendment to the U.S. Constitution provides, in relevant part, "the accused shall enjoy the right . . . to be confronted with the witnesses against him." Neb. Const. art. I, § 11, provides, in relevant part, "the accused shall have the right . . . to meet the witnesses against him face to face." This court has held that the analysis under article I, § 11, of the Nebraska Constitution is the same as that under the Sixth Amendment. *State v. Plant*, 236 Neb. 317, 461 N.W.2d 253 (1990). See *State v. Roy*, 214 Neb. 204, 333 N.W.2d 398 (1983).

This court has previously recognized that notwithstanding the articulation of the Confrontation Clauses, "if the Confrontation Clauses were interpreted literally, they would require, on objection, the exclusion of any statement made by a declarant not present at trial; however, the right to confrontation is not absolute." *State v. Jacob*, 242 Neb. 176, 190, 494 N.W.2d 109, 119 (1993). See *State v. Warford*, 223 Neb. 368, 375, 389 N.W.2d 575, 580 (1986) (stating that "right of confrontation is not . . . immune to exception" and recognizing that right is subject to certain hearsay exceptions and that right may be waived). See, also, *Maryland v. Craig*, 497 U.S. 836, 847, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990) (stating that Sixth Amendment does not require "an actual face-to-face encounter at trial in *every* instance in which testimony is admitted against a defendant"). The U.S. Court of Appeals for the Eighth Circuit has considered the use of telephonic testimony as it relates to the right of confrontation. See *U.S. v. Jacobs*, 97 F.3d 275 (8th Cir. 1996). In *Jacobs*, the Court of Appeals recognized that certain public policies, such as a criminal defendant's right to a speedy trial or the efficient use of court resources, may compel the telephonic

examination of a witness when the witness is "truly unavailable." 97 F.3d at 282. The *Jacobs* court determined that notwithstanding the Sixth Amendment, telephonic testimony is admissible in a criminal case when (1) an important public policy was demonstrated and (2) the government demonstrated to the trial court the specific necessities justifying telephonic as opposed to face-to-face examination of the witness. See, also, *Maryland v. Craig*, 497 U.S. at 848 (stating that Sixth Amendment Confrontation Clause's preference for face-to-face confrontation at trial " 'must occasionally give way to considerations of public policy and necessities of the case' "), quoting *Mattox v. United States*, 156 U.S. 237, 15 S. Ct. 337, 39 L. Ed. 409 (1895); *State v. Warford*, 223 Neb. at 375, 389 N.W.2d at 580 (citing to *Mattox* and stating that "[a]s early as 1895, the U.S. Supreme Court held that the right of confrontation must occasionally give way to considerations of public policy and the necessities of the case").

Section 83-1058 grants the subject of a petition the right of confrontation, which right we have interpreted as not being absolute. See *State v. Jacob, supra* (right of confrontation not absolute). See, also, *In re Guardianship & Conservatorship of Garcia*, 262 Neb. 205, 631 N.W.2d 464 (2001) (statutory interpretation presents question of law in connection with which appellate court has obligation to reach independent conclusion). We believe the Court of Appeals' approach in *Jacobs*, relying on *Maryland v. Craig, supra*, is appropriate when considering the admissibility of telephonic testimony by a mental health professional during a commitment hearing under the Commitment Act. Accordingly, in the absence of a waiver by the subject of a petition for commitment of his or her right to confrontation, in order to admit the telephonic testimony of a mental health professional, the State must demonstrate that (1) such testimony is necessary to further an important public policy and (2) the mental health professional is "truly unavailable" as a witness, thus necessitating telephonic testimony. *U.S. v. Jacobs*, 97 F.3d at 282. Such demonstration shall be specific to the case because "[m]ere speculation is insufficient to justify abridgement of a [person's] constitutional right to confront[ation]." *Id*. See, also, *State v. Warford, supra*. The requirements of a demonstration of

important public policy and necessity are conjunctive, and the absence of a demonstration of either precludes the admission of the telephonic testimony.

*Propriety of Admission of Easterday's Telephonic Testimony:*
*No Demonstration of Necessity.*

In the instant case, the district court found that "the record is devoid of any showing by the State of any compelling reason or need" to receive Easterday's testimony by telephone. The district court thus determined that there was no demonstration of the purported necessity for telephonic as opposed to live testimony. Although there was argument by the State before the district court that mental health professionals in general are unable to appear personally because of their schedules, we agree with the district court's assessment that the State failed to demonstrate on the record before the board that Easterday was unable to appear personally during the specific commitment hearing pertaining to S.B. Absent such a showing, the district court was correct in its determination that given the subject of the petition's confrontation right under § 83-1058 and the state of the record, the board erred in admitting Easterday's telephonic testimony.

*Evidence of S.B.'s Mental Illness and Dangerousness.*

The State assigns as error the district court's order which determined there was insufficient admissible evidence and which reversed the board's order of commitment. We conclude that the district court did not err.

Under the Commitment Act, the State has the burden of establishing the subject of the petition's mental illness and dangerousness by clear and convincing evidence. *In re Interest of H.W.*, 220 Neb. 423, 370 N.W.2d 155 (1985). See *In re Interest of Wickwire*, 259 Neb. 305, 313, 609 N.W.2d 384, 389 (2000) (stating that in order for mental health board to act under Commitment Act, "[t]here must be clear and convincing proof that the person is mentally ill, [and] there must be clear and convincing proof that the person is dangerous"). The district court stated that "[w]ithout the admission of Dr. Easterday's telephonic testimony, the testimony proffered by S.B.'s father and the deputy sheriff were insufficient, standing alone, to establish the requisite elements of mental illness and dangerousness . . . ."

The district court determined that the board's order was "not properly supported by the evidence." We cannot say, as a matter of law, that the district court erred in this determination. See, *In re Interest of Tweedy*, 241 Neb. 348, 488 N.W.2d 528 (1992); *In re Interest of Rasmussen*, 236 Neb. 572, 462 N.W.2d 621 (1990). Accordingly, we affirm.

## CONCLUSION

In this appeal, the district court reversed an order of commitment. Section 83-1058 provides that the subject of the petition for commitment shall have a right of confrontation. The district court ruled that the board erred in admitting Easterday's telephonic testimony over objection. The record fails to demonstrate a necessity for the telephonic testimony, and therefore, the district court's decision was correct. In the absence of such testimony, the district court's order which reversed the board's order based on insufficient evidence was correct. We affirm.

AFFIRMED.