SUPREME COURT OF ARIZONA
En Banc

IN RE MH-2008-000867

)  Arizona Supreme Court
)  No. CV-09-0297-PR
)
)  Court of Appeals
)  Division One
)  No. 1 CA-MH 08-0022
)
)  Maricopa County
)  Superior Court
)  No. MH2008-000867
)
)
)  **O P I N I O N**
)

Appeal from the Superior Court in Maricopa County
The Honorable Benjamin E. Vatz, Commissioner

**AFFIRMED**

_____

Opinion of the Court of Appeals, Division One
222 Ariz. 287, 213 P.3d 1014 (2009)

**VACATED**

_____

JAMES J. HAAS, MARICOPA COUNTY PUBLIC DEFENDER                Phoenix
        By    Tennie B. Martin, Deputy Public Defender
Attorneys for MH 2008-000867

ANDREW P. THOMAS, MARICOPA COUNTY ATTORNEY                    Phoenix
        By    Anne C. Longo, Deputy County Attorney
              Geraldine Roll, Deputy County Attorney
Attorneys for State of Arizona

BARBARA LAWALL, PIMA COUNTY ATTORNEY                          Tucson
        By    Barbara S. Burstein, Deputy County Attorney
Attorneys for Amicus Curiae Barbara LaWall

_____

**H U R W I T Z**, Vice Chief Justice

¶1      The issue in this case is whether the superior court erred by allowing an evaluating physician to testify telephonically in a mental health commitment proceeding. Because the treatment order has expired, this case is arguably moot. We nonetheless accepted review because the issue presented is of statewide importance and capable of evading review. *See In re Commitment of Alleged Mentally Disordered Person*, 181 Ariz. 290, 292, 889 P.2d 1088, 1090 (1995). We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") § 12-120.24 (2003).

**I**

¶2      In April 2008, Dr. L filed an application pursuant to A.R.S. § 36-520 (2009)[1] seeking an involuntary mental health evaluation of a 21-year old male ("Patient"). The superior court granted the application and ordered inpatient evaluations. *See* A.R.S. § 36-529 (2009). Drs. F and H performed the evaluations, after which Dr. H filed a petition for court-ordered treatment. *See* A.R.S. § 36-533 (2009). At the time, A.R.S. § 36-535(B) (2003) required the petition to be heard within six days of filing unless Patient requested a

---

[1]     We cite the current version of the statutes absent any material change since the events in question.

2

continuance.[2]  The court heard in-person testimony from several lay witnesses and Dr. H.  Section 36-539(B) (2003) requires the testimony of both evaluating physicians.  Dr. F, however, was attending a professional conference on the day of the hearing. Patient did not agree to continue the hearing, and, over his objection, Dr. F testified telephonically.  The trial judge found Patient had a mental disorder and was "persistently or acutely disabled," *see* A.R.S. § 36-540(A) (Supp. 2009), and ordered up to 180 days of inpatient treatment.

¶3      The court of appeals vacated the commitment order, concluding that "[t]he right to confrontation under procedural due process is 'similar' to the right to confrontation under the Confrontation Clause of the Sixth Amendment to the United States Constitution."  *In re MH-2008-000867*, 222 Ariz. 287, 291 ¶ 17, 213 P.3d 1014, 1018 (App. 2009).  The court therefore held that "absent a showing of true necessity, based on unavailability, telephonic testimony of a doctor at such a hearing violates the patient's rights."  *Id.* at 292 ¶ 23, 213 P.3d at 1019.  Noting that Dr. F was in the Phoenix metropolitan area at the time of the hearing and the trial judge had made no findings that "telephonic testimony was necessary," *id.* at ¶ 21, the court of

---

[2]    The statute has since been amended to permit the state to request a continuance of up to three business days.  2009 Ariz. Sess. Laws ch. 153, § 4.

appeals concluded that the order of involuntary commitment could not stand, *id.* at 293 ¶ 27, 213 P.3d at 1020.

## II

¶4        "[F]or the ordinary citizen, commitment to a mental hospital produces a massive curtailment of liberty, and in consequence requires due process protection." *Vitek v. Jones*, 445 U.S. 480, 491-92 (1980) (internal quotations and citations omitted).   The question before us is whether the court of appeals properly concluded that the Due Process Clause of the Fourteenth Amendment mandates that testimony in involuntary commitment hearings satisfy the requirements of the Sixth Amendment Confrontation Clause.[3]

¶5        The court of appeals applied a two-pronged test derived from *Maryland v. Craig*, 497 U.S. 836, 850 (1990), and held that telephonic testimony may be admitted only when "'necessary to further an important public policy and . . . the reliability of the testimony was otherwise assured.'" *In re MH-2008-000867*, 222 Ariz. at 291 ¶ 18, 213 P.3d at 1018 (quoting *In re MH-2004-001987*, 211 Ariz. 255, 260 ¶ 21, 120 P.3d 210, 215 (App. 2005)).  *Craig*, however, was a criminal case, in which the guarantees of the Confrontation Clause of the Sixth Amendment

---

[3]    Because Dr. F's testimony was presented telephonically during the hearing, this case does not involve, nor does Patient raise, any hearsay objection.   *See* Ariz. R. Evid. 801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing").

4

expressly apply. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."). Mental health commitment proceedings, in contrast, are civil actions. *In re MH 2008-001752*, 222 Ariz. 567, 569 ¶ 9, 218 P.3d 1024, 1026 (App. 2009) (declaring criminal case precedent "inapposite" because petitions for involuntary mental health treatment are civil actions).

¶6        In concluding that a Confrontation Clause analysis was nonetheless required, the court of appeals cited *In re S.B.,* 639 N.W.2d 78, 83 (Neb. 2002). *In re MH-2008-000867*, 222 Ariz. at 292 ¶¶ 22-23, 213 P.3d at 1019. As the court of appeals acknowledged, however, the Nebraska opinion is premised on a statute affording subjects of commitment hearings confrontation rights equivalent to those of criminal defendants. *Id*. at 292 ¶ 22 n.4, 213 P.3d at 1019 n.4 (citing Neb. Rev. Stat. § 71-954 (2008)). Arizona has no comparable statute.

¶7        The court of appeals also relied upon *In re MH 2004-001987*, 211 Ariz. at 260 ¶ 21, 120 P.3d at 215, for the proposition that Patient's due process rights were "similar" to the Sixth Amendment Confrontation Clause rights of a criminal defendant. *In re MH-2008-000867,* 222 Ariz. at 291 ¶ 17, 213 P.3d at 1018; *id*. at 292 ¶ 22 n.4, 213 P.3d at 1019 n.4. But although the Supreme Court of the United States has emphasized

the need for procedural due process in civil commitment hearings, *see, e.g.*, *Vitek*, 445 U.S. at 491-92, neither that Court nor any other, to our knowledge, has held that the Confrontation Clause applies to such cases.

¶8      Although civil commitment proceedings pose a potential loss of liberty, they differ from criminal proceedings in many important ways.   As the Supreme Court has noted, a civil commitment proceeding should not be constitutionally "equated to a criminal prosecution" because the state is not acting in a punitive manner.  *Addington v. Texas*, 441 U.S. 418, 428 (1979). The patient is provided treatment under terms and conditions specified by the court, rather than incarcerated or otherwise punished.  A.R.S. § 36-540(A).  The patient must be offered "the least restrictive treatment alternative available."   A.R.S. § 36-540(B).   And a committed patient also is entitled to periodic judicial review to show changed circumstances, which can result in release.  A.R.S. § 36-546(C) (2009).

¶9      We do not minimize the importance of the loss of liberty to an involuntarily committed patient.  *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (noting that "the most elemental of liberty interests" is "the interest in being free from physical detention by one's own government").  But, rather than the Confrontation Clause analysis demanded in criminal proceedings by the Sixth Amendment, the appropriate test to

6

determine whether Fourteenth Amendment procedural due process has been afforded in this context is the one set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews*, three factors are considered when determining "the specific dictates of due process" in a civil proceeding:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

¶10    Although *Mathews* involved the deprivation of a property interest, *id.* at 332, the Supreme Court has repeatedly applied *Mathews* in cases involving important liberty interests, *see, e.g.*, *Wilkinson v. Austin*, 545 U.S. 209, 225 (2005) (using *Mathews* analysis to determine due process required before assigning an inmate to a high-security facility); *Hamdi*, 542 U.S. at 528-29 (using *Mathews* analysis to determine scope of process due to United States citizens detained as enemy combatants). Similarly, in determining whether civil mental health commitment proceedings afford basic Fourteenth Amendment due process, we must balance the liberty interests of the patient against the various interests of the state, and consider whether the procedures used or proposed alternatives will likely

7

lead to more reliable outcomes. *See In re W.J.C.*, 369 N.W.2d 162, 163-64 (Wis. Ct. App. 1985) (applying *Mathews* analysis to civil commitment proceedings).

## III

¶11    In commitment proceedings, as in other civil cases, we start from the notion that testimony is ordinarily taken from witnesses "orally in open court." Ariz. R. Civ. P. 43(f); *see also* A.R.S. § 36-539(D) (Supp. 2009) (providing that "all rules of evidence and the Arizona rules of civil procedure" are followed in civil commitment proceedings if not inconsistent with the statutory commitment procedures). But, as the court of appeals has noted, a "cluster" of civil rules contemplate the admission of testimony presented otherwise. *See Sabori v. Kuhn*, 199 Ariz. 330, 332-33 ¶¶ 11-13, 18 P.3d 124, 126-27 (App. 2001). When considering telephonic testimony, the initial inquiry should be whether good cause has been shown for its use. *Cf.* Fed. R. Civ. P. 43(a) (providing that testimony may, "for good cause shown," be taken "in open court by contemporaneous transmission from a different location"). Although the superior court did not make such a finding here, the conflicting professional obligation of Dr. F and the apparent unwillingness

of Patient to continue the hearing to a time when this necessary witness could be present furnished the requisite good cause.[4]

¶12    We next consider whether admission of telephonic testimony comported with due process.  As the Court noted in *Mathews*, "'[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances."  424 U.S. at 334 (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)).  Thus, in the context of an involuntary commitment proceeding, we must evaluate the individual liberty interest involved, the interests of the state, and the likely impact of telephonic testimony on the accuracy and fairness of the process.

¶13    Involuntary commitment involves a significant curtailment of individual liberty.  In circumstances like those presented here, however, allowing telephonic testimony serves important governmental interests and does not significantly increase the risks of an erroneous deprivation.  Although Dr. F was not physically present in the courtroom, he was subject to full cross-examination.  *See Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) (due process requires opportunity to cross-examine

---

[4]    In determining whether good cause has been demonstrated, the court may consider whether the hearing can conveniently be continued to allow in-person testimony.  It may also consider the costs of bringing experts or other witnesses to court, particularly in those counties in which there are relatively few mental health professionals available.

9

adverse witnesses "[i]n almost every setting where important decisions turn on questions of fact").  Dr. F's report was provided to Patient in advance of the hearing, and his testimony largely duplicated that of Dr. H, who was present in the courtroom.  And, given that Patient did not assent to continue the statutory deadline for the hearing to secure Dr. F's appearance, the State's important interest in protecting Patient and members of the public from potential physical harm would have been thwarted had telephonic testimony not been allowed.

**IV**

¶14    We therefore conclude that the admission of Dr. F's telephonic testimony did not deprive Patient of Fourteenth Amendment procedural due process.  We affirm the order of the superior court and vacate the opinion of the court of appeals.

_____
Andrew D. Hurwitz, Vice Chief Justice


CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
Michael D. Ryan, Justice


10

_____
W. Scott Bales, Justice


_____
A. John Pelander, Justice