263 P.3d 82

**In re MH2010–002637.**

**No. 1 CA–MH 11–0011.**

Court of Appeals of Arizona, Division 1, Department E.

Sept. 27, 2011.

William G. Montgomery, Maricopa County Attorney by Bruce P. White, Deputy County Attorney and Anne C. Longo, Deputy County Attorney, Phoenix, Attorneys for Appellee.

Martin Lieberman, Maricopa County Legal Defender by Colin F. Stearns, Deputy Legal Defender, Phoenix, Attorneys for Appellant.

## OPINION

KESSLER, Judge.

¶ 1 In this appeal from the trial court's order involuntarily committing Appellant, we are asked to decide two issues. First, when the patient is absent from the evidentiary hearing required by Arizona Revised Statutes ("A.R.S.") section 36–539(C) (Supp. 2010), may the court proceed with that hearing without first finding that the patient can-

not appear through any other means?[1] Second, does a person facing civil commitment have the right to effective assistance of counsel, and if so, how is a claim of ineffective assistance of counsel to be resolved? On this record, we hold that the trial court had an independent duty to inquire into alternative means of appearance before proceeding under A.R.S. § 36–539(C). We also hold that persons subject to civil commitment proceedings are entitled to effective assistance of counsel and, at a minimum, counsel must meet the statutory duties outlined in A.R.S. § 36–537(B) (Supp.2010).

¶ 2 For the reasons stated below, we remand this matter to the trial court for further proceedings consistent with this decision. If the court ultimately decides that Appellant could have been present by other means and/or counsel did not meet the statutory duties under A.R.S. § 36–537(B), the court shall vacate the order of commitment, but may hold a new hearing to determine if Appellant is still in need of services under the civil commitment statutes.

## FACTUAL AND PROCEDURAL HISTORY

¶ 3 Appellant, a diagnosed schizophrenic, was admitted to Banner Good Samaritan Hospital after losing twenty-six pounds over the prior four-week period. Appellant was coughing severely and appeared to be quite ill. The Good Samaritan medical team determined that Appellant had a low white blood cell count, but was unable to determine the cause due to Appellant's repeated refusal to submit to treatment.

¶ 4 On November 23, 2010, after Appellant's continued refusal to accept treatment, a deputy medical director successfully petitioned for a court-ordered evaluation of Appellant. The order also appointed the public defender to represent Appellant. Appellant was then transferred from Good Samaritan to Maricopa Medical Center, where his mental and physical health were evaluated. On November 30, 2010, deputy medical director Boskailo filed a petition for court-ordered treatment. Dr. Boskailo asserted that Appellant was persistently or acutely disabled and that he was in need of a combination of in- and out-patient treatment.

¶ 5 Appellant was again appointed the public defender to represent him at the civil commitment hearing, which was scheduled for December 7, 2010. At the beginning of the hearing, Petitioner called Dr. Bailon to testify in regard to Appellant's absence from the hearing. Since Dr. Bailon was also unable to physically attend, the court allowed her to testify telephonically. Dr. Bailon testified that it would not be possible for Appellant to physically attend the hearing or for the hearing to be physically brought to him. She stated that Appellant was in isolation because he had a dangerously low white blood cell count. His condition gravely increased his risk of contracting an infection and made it impossible for him to have contact with anyone outside of his medical team and his social worker. Dr. Bailon said she did not believe that Appellant's condition would improve quickly enough to allow him to attend in person if the hearing was moved within the six-day window established by A.R.S. § 36–535(B) (Supp.2010), which would expire the following day.

¶ 6 During the cross-examination of Dr. Bailon, Appellant's counsel stated that he had not met or talked with Appellant, as required by A.R.S. § 36–537(B), because Appellant was in isolation due to his medical condition. Counsel stated that Appellant's prior attorney, who apparently was also with the public defender's office, had talked to Appellant, who wanted the hearing held without a continuance beyond the six-day statutory requirement. However, the hearing counsel was unaware whether Appellant desired to attend the hearing. After this admission, counsel proceeded to ask Dr. Bailon to further explain why Appellant could not attend and why it would be inadvisable to have the hearing moved to Appellant's location.

¶ 7 Counsel did not suggest that Appellant could participate at the hearing by other

---

1. We cite the current version of applicable statutes because no revisions material to this decision have since occurred.

means, and without *sua sponte* inquiring into such a possibility, the trial court proceeded with the hearing without Appellant's presence under A.R.S. § 36–539(C). Appellant's counsel did not object, but asked the trial court to makes its decision based on Dr. Bailon's testimony.

¶ 8 Counsel then stipulated to the admission of the affidavits of Dr. Boskailo and another doctor named Pinson. These affidavits indicated that Appellant was persistently or acutely disabled and in need of involuntary commitment. Once the affidavits were entered in evidence, Petitioner called two witnesses, Nurse Janssen and Scott Chasan, to testify in support of Dr. Boskailo's and Dr. Pinson's conclusions.

¶ 9 Nurse Janssen testified about her experiences with Appellant while he was hospitalized at Good Samaritan. Specifically, she testified Appellant was "very disheveled and refusing ... his care." During cross-examination, counsel asked Nurse Janssen only whether she personally thought Appellant needed psychiatric help and whether she had offered it to him. These questions did nothing to undermine Petitioner's case. If anything, they provided Nurse Janssen with an opportunity to give lay-opinion testimony about the need to involuntarily commit Appellant for treatment.

¶ 10 Petitioner then called Mr. Chasan to testify about Appellant's past and present mental and physical condition. Appellant's counsel chose not to cross-examine Mr. Chasan. Furthermore, Appellant's counsel did not offer any evidence on behalf of Appellant and did not give a closing argument.

¶ 11 After both parties rested, the trial court found by clear and convincing evidence that Appellant was persistently or acutely disabled and in need of court-ordered mental health treatment. The court then committed him to mandatory combined in- and out-

patient treatment. The court ordered the treatment to continue until Appellant was no longer persistently or acutely disabled, but limited the treatment to a maximum of 180 days of in-patient treatment and 365 days of total treatment.[2]

¶ 12 Appellant timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12–2101(B), (K)(1) (2003) and 36–546.01 (2009).

## STANDARD OF REVIEW

■■■ ¶ 13 "We review the application and interpretation of statutes as well as constitutional claims *de novo* because they are questions of law." *In re MH 2007–001275*, 219 Ariz. 216, 219, ¶ 9, 196 P.3d 819, 822 (App. 2008), *superseded by statute on other grounds by* A.R.S. § 36–537 and –539. The claim of ineffective assistance of counsel presents a mixed question of law and fact; we defer to the trial court's factual findings but review *de novo* the ultimate legal conclusion. *See In re MH 2004–001987*, 211 Ariz. 255, 260, ¶ 24, 120 P.3d 210, 215 (App.2005).

## DISCUSSION

¶ 14 Appellant argues he was denied: (1) Procedural due process when the trial court waived his presence under A.R.S. § 36–539(C) without inquiring into alternative means of appearance; and (2) Effective assistance of counsel at the hearing.

## I. The trial court had an independent duty to inquire into alternative means of appearance.

■■ ¶ 15 While it is uncontested that Appellant could not physically attend the hearing, Appellant argues that it was error for the trial court to proceed without his presence under A.R.S. § 36–539(C) without first establishing that he could not appear through alternative means. We agree.[3]

---

2. At oral argument on appeal, the parties informed this Court that Appellant remains subject to the trial court's order but is currently receiving treatment on an out-patient basis.

3. In the criminal context, we will review error alleged for the first time on appeal under a fundamental error analysis. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 608

(2005). However, fundamental error analysis is rarely used in the civil context. *Williams v. Thude*, 188 Ariz. 257, 260, 934 P.2d 1349,1352 (1997). Civil commitment hearings are not criminal proceedings. *In re MH–2008–000867*, 225 Ariz. 178, 180–81, ¶ 8, 236 P.3d 405, 407–08 (2010). Given the liberty interests at stake in civil commitment proceedings, we will review the issue of the trial court's duty to inquire into

¶ 16 Due to the "massive curtailment of liberty" that accompanies involuntary treatment, a patient facing civil commitment must be afforded due-process protection. *Vitek v. Jones*, 445 U.S. 480, 491–92, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (citation and internal quotation marks omitted); *see also In re MH 2007–000629*, 219 Ariz. 289, 291, ¶ 8, 197 P.3d 750, 752 (App.2008). However, a civil commitment hearing is a civil proceeding, not a criminal one. *MH 2007–000629*, 219 Ariz. at 292, ¶ 13, 197 P.3d at 753. The requisite level of process that must be provided is different in a civil commitment case than it is in a criminal proceeding. *Addington v. Texas*, 441 U.S. 418, 428, 430–31, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); *In re MH–2008–000867*, 225 Ariz. 178, 180–81, ¶ 8, 236 P.3d 405, 407–08 (2010). In determining whether due process has been afforded in a civil commitment case, we look to the three-factor test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *MH–2008–000867*, 225 Ariz. at 181, ¶ 9, 236 P.3d at 408; *see also In re W.J.C.*, 124 Wis.2d 238, 369 N.W.2d 162, 163 (Wis. Ct.App.1985) ("The *Mathews* approach is appropriate to analyze the validity of a state's [civil] commitment procedure under a procedural due process challenge.").

¶ 17 Under *Mathews*, we are to consider the following three factors when determining "the specific dictates of due process":

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335, 96 S.Ct. 893.

¶ 18 As to the first factor, it is uncontested that a patient's liberty can be massively curtailed through civil commitment. *Vitek*, 445 U.S. at 491, 492, 100 S.Ct. 1254 ("The

loss of liberty produced by an involuntary commitment is more than a loss of freedom from confinement.... [C]ommitment to a mental hospital 'can engender adverse social consequences to the individual' and ... 'can have a very significant impact on the individual.' ") (quoting *Addington*, 441 U.S. at 425–26, 99 S.Ct. 1804). Given the adverse implications on a patient's liberty, "the risk of error ... is substantial enough to warrant appropriate procedural safeguards against error." *Id.* at 495, 99 S.Ct. 1804. Among the minimum procedural safeguards is the need to provide the patient with a meaningful opportunity to be heard at the civil commitment hearing. *Id.* at 496, 99 S.Ct. 1804; *see also Mathews*, 424 U.S. at 333, 96 S.Ct. 893 ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner") (citation and internal quotation marks omitted).

¶ 19 As to the second factor, risk of an erroneous deprivation of such interest through the procedures used, the Supreme Court has recognized that a civil commitment case "turns on the *meaning* of the facts which must be interpreted by expert psychiatrists and psychologists." *Addington*, 441 U.S. at 429, 99 S.Ct. 1804 (emphasis in original). Such psychiatric diagnosis is both fallible and lacks certainty. *Id.* As the *Addington* court articulated:

> The subtleties and nuances of psychiatric diagnosis render certainties virtually beyond reach in most situations.... Psychiatric diagnosis ... is to a large extent based on medical "impressions" drawn from subjective analysis and filtered through the experience of the diagnostician. This process often makes it very difficult for the expert physician to offer definite conclusions about any particular patient.

*Id.* at 430, 99 S.Ct. 1804. These "subtleties and nuances of psychiatric diagnosis" are precisely why it is necessary to provide the patient with due process rights, such as the opportunity to be seen and heard by the court. *Vitek*, 445 U.S. at 495, 496, 100 S.Ct.

---

remote participation by the Appellant without

resort to fundamental error analysis.

1254 (citing *Addington,* 441 U.S. at 430, 99 S.Ct. 1804). Giving the patient an opportunity to be heard not only allows the patient to assist his or her counsel in directly challenging the findings of the experts, but also provides the court with an opportunity to determine whether the patient is in need of involuntary treatment.

¶ 20 Section 36–539 outlines Arizona's procedural requirements for a civil commitment hearing. It mandates that "[t]he patient and the patient's attorney shall be present at all hearings," thereby ensuring that the patient has a meaningful opportunity to be heard. A.R.S. § 36–539(B). However, A.R.S. § 36–539(C) provides that a court may continue a civil commitment hearing in the patient's absence "[i]f the patient, for medical reasons, is unable to be present at the hearing and the hearing cannot be conducted where the patient is being treated or confined." When a patient is absent, the patient is no longer afforded the opportunity to be heard personally and possibly observed by the court, which participation might assist the court in determining the alleged need for court-ordered mental health treatment.

¶ 21 Appellant urges us to require the trial court to consider alternate means for the patient to participate prior to proceeding without the patient being present. One alternative Appellant proposes is that the trial court should inquire into whether the patient can appear telephonically. This alternative is sensible considering that we have already held that appearance by telephone provides a meaningful opportunity to be heard and "is an appropriate alternative to personal appearance." *Dep't of Econ. Sec. v. Valentine,* 190 Ariz. 107, 110, 945 P.2d 828, 831 (App. 1997). While *Valentine* discussed due process in the context of child custody, we see no reason why its logic does not apply equally to civil commitment hearings. Indeed, our supreme court held that permitting a testifying physician in a civil commitment case to appear telephonically does not significantly increase the risk of an erroneous deprivation of due process and liberty. *MH–2008–*

*000867,* 225 Ariz. at 182, ¶ 13, 236 P.3d at 409. If a key witness for the petitioner in a commitment case may appear by telephone, certainly the court should try by any reasonably possible means to secure the appearance of the person whose liberty is at risk. By appearing telephonically or remotely, the patient is given an opportunity to be heard, and the risk of erroneous or unwarranted confinement is mitigated.

¶ 22 Third, we are hard pressed to find any government interest in precluding a patient from appearing telephonically or remotely or in not requiring a trial court to simply inquire as to such an appearance. In fact, the Arizona Supreme Court has already held that "allowing telephonic testimony [at a civil commitment hearing] serves important governmental interests." *Id.*[4] When we consider the state's strong public policy to have the patient attend the civil commitment hearing, as articulated in A.R.S. § 36–539, we see no reason why it is not also in the petitioner's interest to allow a patient, who otherwise could not attend, to appear telephonically or remotely if feasible.

¶ 23 When Appellant's trial counsel has not inquired into whether the patient desires to attend the hearing and whether electronic attendance is feasible, we conclude that *Mathews* requires the court to at least consider alternative means of appearance when the patient cannot otherwise attend. Our holding is based upon considerations of the patient's substantial interest, the increased risk of error when a patient does not have the opportunity to be heard, the ease of providing the patient with an alternative means of attending the hearing, and the important government interest in having the patient attend the hearing.

■ ¶ 24 In addition to *Mathews,* the dictates of A.R.S. § 36–539(C) also support our holding. When construing the meaning of a statute, "[w]e give clear and unambiguous statutory language its plain and ordinary meaning unless absurd consequences would result." *State v. Hasson,* 217 Ariz. 559, 562, ¶ 11, 177 P.3d 301, 304 (App.2008). However,

---

4. During this hearing the court allowed Dr. Bailon to testify telephonically from the hospital at which the patient was located.

when a statute is ambiguous or absurd consequences would result from the ordinary meaning, we "will apply constructions that make practical sense rather than hypertechnical constructions that frustrate legislative intent." *State v. Cornish,* 192 Ariz. 533, 537, ¶ 16, 968 P.2d 606, 610 (App.1998). In doing so, we will "give meaning to each clause and consider the effects and consequences as well as the spirit and purpose of the law." *In re MH 2007-001264,* 218 Ariz. 538, 540, ¶ 9, 189 P.3d 1111, 1113 (App.2008) (quoting *State v. Garza Rodriguez,* 164 Ariz. 107, 112, 791 P.2d 633, 638 (1990)).

¶ 25 On its face, A.R.S. § 36–539(C) appears to allow the trial court to proceed with the hearing in the patient's absence when the patient, due to medical reasons, is unable to be physically present at the hearing and the hearing cannot physically be conducted where the patient is located. However, a patient should not be denied the right to be present simply because he or she is medically unable to physically attend. The spirit and purpose of A.R.S. § 36–539(B) and (C) are clear: the patient has the right to attend the civil commitment hearing. *In re MH 2006-000749,* 214 Ariz. 318, 322, ¶ 17, 152 P.3d 1201, 1205 (App.2007). Such a purpose is evidenced by A.R.S. § 36–539(C)'s provision that, when a patient is unable to physically attend the hearing, the court shall inquire into whether it is possible to bring the hearing to the patient. Allowing the court to continue in the patient's absence, simply because the physical presence of the patient is not feasible, should not be a basis for proceeding without at least first inquiring whether the patient can be present by other means, such as telephone or video conferencing.

¶ 26 Accordingly, we interpret the terms "present" and "conducted" in A.R.S. § 36–539(C) in a less hypertechnical manner. While hearings once had to be conducted in person, that is no longer the case. With today's technology, a hearing can be conducted telephonically from multiple locations and telephonic testimony is expressly condoned. *MH–2008-000867,* 225 Ariz. at 181, ¶ 11, 236 P.3d at 408. Thus, when it is not feasible to move the hearing to the patient's location,

assuming the patient desires to attend, the trial court must find by clear and convincing evidence that the patient is unable to appear and participate through some other reasonably feasible means. See A.R.S. § 36–539(C)("If the patient, for medical reasons, is unable to be present at the hearing and the hearing cannot be conducted where the patient is being treated ... the court shall require clear and convincing evidence that the patient is unable to be present at the hearing ...").

¶ 27 At the hearing, there was no evidence that the patient chose to waive his right to be present. Similarly, while the record indicates that Appellant's medical condition prevented him from physically attending the hearing, there is nothing to suggest that Appellant was unable to appear through some other means. Accordingly, we remand this matter for additional factfinding on this issue. If the trial court finds that Appellant could have appeared by another means, it should vacate the order of commitment and hold a new commitment hearing, if necessary.

## II.  Effective assistance of counsel.

¶ 28 Appellant also argues that he was denied effective assistance of counsel because his appointed counsel at the hearing never interviewed him, did not seek to have him participate at the hearing, offered no evidence at the hearing to oppose the petition, cross-examined only one witness (which permitted that witness to testify about the need for mental health treatment) and made no closing argument. Petitioner conceded at oral argument on appeal that Appellant has a right to effective assistance of counsel. We agree that Appellant has a right to effective assistance of counsel and on this record, remand to the trial court to determine if counsel failed to meet his obligations under A.R.S. § 36–537.

¶ 29 Under A.R.S. § 36–528(D) (2009), –535(A), –536(A), and –539(B) (Supp.2010), a patient facing a civil commitment proceeding is entitled to assistance of counsel. The patient's rights are found in the Due Process Clause of the Fourteenth Amendment; Article 2, Section 4, of the Arizona Constitution;

and Arizona's civil commitment statute. *MH–2008–000867*, 225 Ariz. at 181, ¶ 9, 236 P.3d at 408 (holding that any confrontation right is found in the Fourteenth Amendment's Due Process Clause, not the Confrontation Clause of the Sixth Amendment); Joseph Frueh, Note, *The Anders Brief in Appeals from Civil Commitment*, 118 Yale L.J. 272, 286 (2008) ("Frueh").

¶ 30 Because the right to effective assistance of counsel is a due process question, we must turn to *Mathews*. Given the significant liberty interests involved, the substantial risk of error without a competent attorney, and the government interest that patients are represented, the Due Process Clause of the Fourteenth Amendment requires that a civil commitment patient receive effective assistance of counsel. *In re Beverly*, 342 So.2d 481, 489 (Fla.1977); *Matter of Carmody*, 274 Ill.App.3d 46, 210 Ill.Dec. 782, 653 N.E.2d 977, 983 (1995) (holding that the statutory right to counsel at a civil commitment hearing "implicitly includes the right to the effective assistance of that counsel"); *In re Mental Health of K.G.F.*, 306 Mont. 1, 29 P.3d 485, 491, ¶ 30 (2001) (citation and internal quotation marks omitted) (reasoning that "where a state statute affords an individual subject to involuntary commitment with the right to counsel, the legislature could not have intended that counsel could be prejudicially ineffective"); *In re Hutchinson*, 500 Pa. 152, 454 A.2d 1008, 1011 (1982) (reasoning that "[f]or the legislatively-created right to representation to have meaning, counsel must be effective").

¶ 31 A.R.S. § 36–537(B) provides a lengthy outline of the minimal duties of counsel for a patient. It requires that, among other things, counsel shall review the petition for evaluation and various documents and records related to the petition, interview the patient, the petitioner, and various other witnesses, and investigate any possible alternatives to involuntary treatment. A.R.S. § 36–537(B). The statutory requirements must be strictly adhered to. *See In re Commitment of Alleged Mentally Disordered Pers.*, 181 Ariz. 290, 293, 889 P.2d 1088, 1091 (1995) ("Because [civil commitment] proceedings may result in a serious deprivation of liberty ... statutory requirements must be strictly adhered to."). By establishing such specific requirements, the legislature surely expected that counsel provide effective assistance to the patient at least consistent with A.R.S. § 36–537(B).

¶ 32 This does not mean that appellate courts should assume or readily find ineffective assistance of counsel simply because an Appellant from a civil commitment hearing can point to isolated instances of alleged failures of counsel to possibly adequately communicate with the client or to present evidence. Rather, a person subjected to civil commitment hearings and the trial court may have a number of means to effectively create a record as to ineffective assistance of counsel prior to appellate review, including a party raising that issue before the superior court at the appropriate time or newly appointed appellate counsel seeking post-trial relief to have the superior court determine whether counsel's representation was so deficient as to amount to ineffective assistance of counsel. *See* Ariz. R. Civ. P. 60.[5]

¶ 33 Simply because the hearing counsel did not cross-examine most of the witnesses or present evidence to oppose the petition does not mean that counsel was ineffective. *State v. Gerlaugh*, 144 Ariz. 449, 462–63, 698 P.2d 694, 707–08 (1985). It is possible that hearing counsel talked to the earlier counsel about her meeting with Appellant and that after diligently preparing for the hearing, could not find evidence to rebut the case in favor of the petition. However, in this case we are troubled that the hearing counsel never met with the Appellant and did

---

5. Alternatively, an appellate court could remand the matter to the superior court for evidentiary hearings and findings on the effectiveness of appointed counsel. *See In re Condry's Estate*, 117 Ariz. 566, 568, 574 P.2d 54, 56 (App.1977). In *In re Maricopa County Juv. Action No. JS–4942*, 142 Ariz. 240, 242, 689 P.2d 183, 185 (App. 1984), we reversed and remanded the matter to the juvenile court for an evidentiary hearing to determine whether the parent had received adequate notice of the hearings against him and whether the parent had received effective assistance of counsel. 142 Ariz. at 242, 689 P.2d at 185.

not seek to have Appellant participate at the hearing in addition to the other alleged failures. It is impractical, if not impossible, for us to resolve whether Appellant was provided effective assistance of counsel on the record presented. Accordingly, on remand, the trial court shall consider whether Appellant's trial counsel, at a minimum, met the statutory duties required by A.R.S. § 36–537(B). In addressing this issue, the court may consider whether Appellant's counsel at the hearing, or the prior counsel who apparently was in the public defender's office, met those duties and shared the information obtained. If the court determines that counsel did not meet those statutory duties, it shall vacate the order of commitment and may, if appropriate, hold a new section 36–539 hearing if requested by Petitioner. *In re Commitment of Alleged Mentally Disordered Pers.*, 181

Ariz. at, 293, 889 P.2d at 1091 (statutory requirements must be strictly adhered to).[6]

## CONCLUSION

¶ 34 For the aforementioned reasons we remand this matter to the trial court for further proceedings consistent with this decision.

CONCURRING: JOHN C. GEMMILL, Presiding Judge, PATRICK IRVINE, Judge.

---

6. Given our holding on counsel's statutory duties and the lack of any record regarding the other acts alleged to show ineffective assistance of counsel, we do not address those other allegations. Nothing in our opinion precludes the trial court from addressing those alleged acts if Appellant raises those issues on remand and the trial court does not otherwise order a new hearing based on Appellant's ability to appear remotely at the earlier hearing or hearing counsel's alleged failure to comply with his statutory duties.

As to any other duties of counsel, we note that there are at least several possible standards to determine effective assistance of counsel in this context. *Compare Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (holding counsel will be held ineffective if he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and such performance prejudiced the defense), *with United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (holding "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, ... the adversary process itself [is] presumptively unreliable"); *State v. Carriger*, 132 Ariz. 301, 304, 645 P.2d 816, 819 (1982) (holding "when counsel's acts and omissions reduce his role to one approach-

ing that of a neutral observer, a defendant is denied the effective assistance of counsel"), *and Mental Health of K.G.F.*, 29 P.3d at 492, ¶ 35 (rejecting the *Strickland* standard in the context of civil commitment proceedings and holding "reasonable professional assistance cannot be presumed in a proceeding that routinely accepts—and even requires—an unreasonably low standard of legal assistance and generally disdains zealous, adversarial confrontation") (citation and internal quotation marks omitted). *See also* Phyllis Coleman & Ronald A. Shellow, *Ineffective Assistance of Counsel: A Call for a Stricter Test in Civil Commitments*, 27 J. Legal Prof. 37 (2003); Bruce J. Winick, *Therapeutic Jurisprudence and the Civil Commitment Hearing*, 10 J. Contemp. Legal Issues 37 (1999); Nat'l Ctr. for State Courts, Guidelines for Involuntary Civil Commitment 46 (1986); Note, *The Role of Counsel in the Civil Commitment Process: A Theoretical Framework*, 84 Yale L.J. 1540 (1975); Joshua Cook, Note, *Good Lawyering and Bad Role Models: The Role of Respondent's Counsel in a Civil Commitment Hearing*, 14 Geo. J. Legal Ethics 179 (2000). Given the lack of any record to show if and how hearing counsel was ineffective *beyond the statutory requirements of section 36–537*, we leave it to the trial court to determine, if necessary, which test is the most appropriate in this context.