NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE MH2013-001793

---

No. 1 CA-MH 13-0045
FILED 03/11/2014

---

Appeal from the Superior Court in Maricopa County
No.  MH2013-001793
The Honorable Susan G. White, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Anne C. Longo
*Counsel for Appellee*

Maricopa County Legal Defender's Office, Phoenix
By Anne H. Phillips
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Michael J. Brown joined.

---

**D O W N I E**, Judge:

¶1          J.M. appeals from an order requiring him to undergo involuntary mental health treatment.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          J.M. was hit by a car, resulting in paraplegia.  While hospitalized, J.M. refused medical treatment, which exacerbated his condition and resulted in serious complications, including infections, stage four skin ulcers, pneumonia, and osteomyelitis.  J.M. also refused medications.

¶3          J.M. was diagnosed with paranoid schizophrenia and displayed delusional thought processes and disorganized thinking.  He believed doctors "were trying to poison him, get him addicted to heroin." J.M. talked about "robots that he saw in a movie that may be real, people who live in tunnels that he has visited and . . . 'signs' on the walls marking their presence."  He believed family members were involved in his accident because they wanted a piece of his leg.  J.M. refused psychotropic medications and voluntary psychiatric treatment.  His medical condition prevented moving him to a psychiatric facility.

¶4          A hospital psychiatrist deemed J.M. incapable of making medical decisions.  J.M.'s mother was appointed as a surrogate decision-maker.  She, however, deferred to her son's decisions regarding medical care.

¶5          A Petition for Court-Ordered Evaluation was filed, and the court issued a standard order requiring J.M. to be evaluated at the Maricopa Medical Center Desert Vista Campus.  J.M., though, was confined to his hospital bed, so Doctors Kingsley and Fife evaluated him at the hospital.  J.M. refused to "cap" his tracheostomy tube and speak to Dr. Kingsley; he instead communicated via "terse" notes.  However, J.M. communicated with Dr. Fife orally and through notes.  Both doctors concluded that J.M. was persistently or acutely disabled and that he suffered from a mental disorder.

¶6          A Petition for Court-Ordered Treatment was filed, and J.M. was ordered to appear at the Maricopa Medical Center Desert Vista Campus for a hearing.  Petitioner's counsel advised the court that J.M. could not be transported for the hearing and that his medical condition

was becoming "graver with the passage of time."[1]  Petitioner's counsel requested that J.M. appear telephonically. J.M.'s attorney objected and asked the court to go to J.M.'s hospital room to conduct the hearing.

¶7            In discussing how to proceed, the court inquired whether an immediate treatment order was necessary.  Counsel for petitioner responded that J.M. was "in very poor health, has severe bedsores, stage 3 and 4 where the sore goes to the bone, and he's refusing treatment, psychiatric treatment. . . . So his physical health is declining rapidly."  The court then engaged in the following colloquy with J.M.'s attorney:

> THE COURT:  . . . [T]his gets into a sticky area.  You know, number one, in order to know for sure whether we can conduct the hearing there we have to know from the administration at that hospital, because it's not an MIHS hospital, whether there's any objection to the Court conducting proceedings there.  I don't know, is he in a room by himself?
>
> [COUNSEL]:  He is by . . . himself.  And when I spoke to [the hospital social worker], she said if we needed to hear from his physician or anybody else in administration, she would make sure that would happen.
>
> . . . .
>
> And I would disagree with [petitioner's counsel].  I think the law is very clear.  It doesn't say if we can go there, it's or can we go there.
>
> THE COURT:  Well, but that --
>
> [COUNSEL]:  Regardless of whether we want to or not.
>
> THE COURT:  Right.  And I understand that, but theoretically . . . I can go anywhere in the county, but practically speaking, this Court is not able to do that.  With the calendars we have at this time, this Court can barely get through the hearing schedule --

---

[1]     J.M.'s counsel confirmed that her client could not leave his hospital bed "even for five minutes" and could not be transported because his bed was too heavy and required a generator.

. . . .

[COUNSEL]:    And I – I understand and respect that. . . . When I last spoke with my client, he did want to be present. And the issue becomes also my effective representation of him, because if I'm here, he's on a trach and has to write everything.

THE COURT:  Right.

[COUNSEL]:  If I'm there, how can I effectively cross? . . . I understand the Court's booked.  Just -- and I -- when I did speak to the nurses there, he is taking the antibiotics because they put it in his IV.  It's any oral meds that he has to get permission for.

. . . .

THE COURT: . . . . And is he in any way contagious?

[COUNSEL]:  He's on contact precautions.  So as long as we gown up and wear gloves, we're fine.  And that's as long as we don't touch him.  That was as of a week ago.  I've done it at the annex before.   He's no longer airborne contact precautions, so we don't have to wear a mask or anything.

¶8        The court declined to conduct the hearing in J.M.'s hospital room, stating:

I do understand the predicaments, but under the circumstances the Court does not feel it's able to go out there to conduct this hearing.  Even if there's, you know, currently a potential that he's contagious, it's a public safety issue.  I can't be requiring the witnesses to go out there.  It's just not safe for people.

And aside from that, the secondary issue is that the calendar is just completely booked, and time wise the Court doesn't believe that it would be able to accommodate that type of hearing.

So we will conduct the hearing telephonically.  I know that leaves you in an awkward position, you have to decide

whether to be there or be here. And you can certainly make your record as you need to.

¶9  At the outset of the hearing, J.M.'s counsel asked the court to reconsider its refusal to travel to the hospital. The court responded:

The Court still finds that there are public health and safety concerns. The Court did review in the doctor's affidavits the client also suffers from MRSA [staph infection]. Apparently he has open wounds on his body that are very severe. He is under contact precaution. The notion of the Court bringing a judge, attorneys, and at least five witnesses over to the patient's room does not, to this Court, seem to be a feasible alternative. And the Court finds that pursuant to the statute of -– public safety, public health issues override.

And the Court also does mention that [the] Court does have some powers regarding the administration of justice to make decisions that are appropriate. This is one of those cases. It is a rare type situation, but considering the totality of the circumstances, the Court does not believe that the Court attempting to conduct a hearing at [J.M.'s] bedside would be an appropriate resolution.

¶10  The hearing commenced. A hospital social worker contacted the court from a telephone in J.M.'s hospital room. J.M. orally confirmed that he was able to hear the proceedings and identified himself by name and birth date. The court advised J.M. to let it know in the event he could not hear what was happening in the courtroom; J.M. responded that he would do so. The social worker remained in J.M.'s room throughout the hearing, and the court checked periodically to confirm that J.M. was still on the line.

¶11  Doctors Kingsley and Fife testified, and their affidavits were admitted into evidence. A crisis therapist and crisis counselor also testified, as did J.M. and his mother. At the conclusion of the hearing, the court found that J.M. was persistently or acutely disabled, in need of psychiatric treatment, and unwilling or unable to accept voluntary treatment. The court ordered him to participate in treatment for a period of time not to exceed one year.

¶12  J.M. timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 36-546.01 and 12-2101(A)(10).

## DISCUSSION

¶13        Pursuant to A.R.S. § 36-539(B), a patient and his attorney "shall be present at all hearings" unless the patient chooses not to attend or counsel waives his presence.  Section 36-539(C), though, states:

> If the patient, for medical reasons, is unable to be present at the hearing and the hearing cannot be conducted where the patient is being treated or confined, the court shall require clear and convincing evidence that the patient is unable to be present at the hearing and on such a finding may proceed with the hearing in the patient's absence.

¶14        It is undisputed that J.M. was unable to be present at the hearing for medical reasons.  The question thus becomes whether the record supports the superior court's determination that the hearing could not be "conducted where the patient is being treated or confined." *Id.*

¶15        J.M. "concedes that the court made a proper inquiry into [him] appearing at the hearing and that the court accommodated him by permitting him to appear telephonically, as required by *In re MH2010-002637*." *See MH2010-002637*, 228 Ariz. 74, 81, ¶ 26, 263 P.3d 82, 89 (App. 2011) ("[W]hen it is not feasible to move the hearing to the patient's location, assuming the patient desires to attend, the trial court must find by clear and convincing evidence that the patient is unable to appear and participate through some other reasonably feasible means.").  J.M. nevertheless asserts a due process violation because the court's "only reasoning was that it was too busy" to go to the hospital.  The record does not support this characterization.

¶16        As detailed *supra*, the court articulated significant issues over and above calendar logistics, which it specifically labeled a "secondary" concern.  The court noted legitimate health and safety impediments to taking court staff and witnesses to J.M.'s bedside.  Among other things, the court observed that J.M. had been diagnosed with MRSA and had "severe" open wounds.  Counsel did not dispute these statements.

¶17        J.M. mentions communications difficulties posed by his tracheostomy tube.  But witnesses testified that J.M. could speak without complication when he chose to do so.  J.M. responded to questions posed during the hearing and never mentioned any difficulty he was experiencing in communicating.

¶18        Based on the record before it, the court did not err in declining to conduct the hearing at J.M.'s bedside. The court accommodated J.M.'s medical condition by permitting him to appear telephonically and by making concerted efforts to ensure that he could fully participate. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (internal quotation marks omitted); *MH2010-002637*, 228 Ariz. at 80, ¶ 21, 263 P.3d at 88 (holding that "appearance by telephone provides a meaningful opportunity to be heard and 'is an appropriate alternative to personal appearance'").

¶19        J.M. also contends he was deprived of his right to counsel because his attorney was not in his hospital room to advise him during the hearing. We conclude otherwise.

¶20        "[A] patient facing a civil commitment proceeding is entitled to assistance of counsel." *MH2010-002637*, 228 Ariz. at 81, ¶ 29, 263 P.3d at 89. J.M. had court-appointed counsel who ably represented him throughout the proceedings. Nothing in the record supports J.M.'s generalized assertion that the physical distance between him and his lawyer affected his representation. J.M. fully participated in the hearing, and his counsel cross-examined witnesses and presented evidence. At no time did J.M. or his attorney request an opportunity to speak privately. Nor did counsel make an offer of proof regarding what she would have done differently had she been in the same location as her client.

¶21        J.M. also contends the court should have appointed "additional" counsel to be at his bedside. He, however, never made such a request and has therefore waived this argument for purposes of appeal. *See Trantor v. Fredrikson*, 179 Ariz. 299, 300, 878 P.2d 657, 658 (1994) ("[E]rrors not raised in the trial court cannot be raised on appeal."). Moreover, J.M. cites no authority for the proposition that the court was required to *sua sponte* appoint an additional attorney to represent him. *See Cullum v. Cullum*, 215 Ariz. 352, 355 n.5, ¶ 14, 160 P.3d 231, 234 n.5 (App. 2007) ("We will not consider arguments posited without authority.").

¶22        J.M. claims it was impossible for his lawyer to effectively represent him because communication was impeded by his tracheostomy tube. A civil commitment patient has a due process right to effective assistance of counsel. *MH2010-002637*, 228 Ariz. at 82, ¶ 30, 263 P.3d at 90; *see also* A.R.S. § 36-537 (outlining the minimal duties of counsel in the civil commitment process). But J.M. does not articulate how his lawyer's

representation was deficient or identify anything in the record suggesting actual communication difficulties. J.M. responded to questions posed by the court and counsel. At no time did he or his lawyer alert the court to any difficulties they were experiencing in communicating.

¶23 Finally, J.M. contends his due process rights were violated because no medication affidavit was provided at the hearing. Section 36-539(A) provides:

> The medical director of the agency shall issue instructions to the physicians or the psychiatric and mental health nurse practitioner treating the proposed patient to take all reasonable precautions to ensure that at the time of the hearing the proposed patient shall not be so under the influence of or so suffer the effects of drugs, medication or other treatment as to be hampered in preparing for or participating in the hearing. The court at the time of the hearing shall be presented a record of all drugs, medication or other treatment that the person has received during the seventy-two hours immediately before the hearing.

¶24 At the conclusion of the hearing, the court stated that it had reviewed the file, including the medication affidavit. When Petitioner's counsel questioned whether a medication affidavit had in fact been filed, the court responded that it had spoken in error and that there was no 72-hour medication affidavit, noting that J.M. was not an inpatient at the psychiatric facility.[2] The court then asked counsel if there was "anything else," to which J.M.'s attorney replied, "No, Your Honor." Counsel did not object to the missing affidavit or request any relief based on its absence.

¶25 On appeal, J.M. contends for the first time that the treatment order must be set aside because of the missing medication affidavit. "We do not consider arguments raised for the first time on appeal except under exceptional circumstances." *In re MH 2008-002659*, 224 Ariz. 25, 27, ¶ 9, 226 P.3d 394, 396 (App. 2010). "[T]he mere invocation of a liberty interest or due process challenge is not necessarily a sufficient reason to forego application of the waiver rule." *Id.* at ¶ 10. The trial court and opposing parties "should be afforded the opportunity to correct any asserted defects

---

[2] During an earlier hearing, J.M.'s attorney confirmed that J.M. was "on an outpatient status."

before error may be raised on appeal." *Trantor*, 179 Ariz. at 300, 878 P.2d at 658.

¶26 The briefing in this case underscores the need to litigate this issue in the superior court in the first instance so that we have an adequate record to review on appeal. In the answering brief, for example, the county attorney offers not only statutory analysis, but factual avowals, "longstanding practice[s]" in mental health cases and policy arguments premised on circumstances we have no way of evaluating for the first time on appeal. The general rule against considering new arguments on appeal is also appropriate here because nothing in the record suggests that J.M. was adversely affected by any medications he took prior to the hearing.

## CONCLUSION

¶27 For the reasons stated, we affirm the involuntary treatment order.



Ruth A. Willingham · Clerk of the Court
FILED: gsh