NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE: MH2025-001114

No. 1 CA-MH 25-0053

FILED 09-30-2025

Appeal from the Superior Court in Maricopa County
No. MH2025-001114
The Honorable Elisa C. Donnadieu, Commissioner

**VACATED AND REMANDED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Sean M. Moore
*Counsel for State of Arizona*

Maricopa County Legal Defender's Office, Phoenix
By Lindsay Ficklin
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Andrew M. Jacobs delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Michael S. Catlett joined.

**J A C O B S**, Judge:

¶1        S.H. appeals the superior court's February 12, 2025 order that she submit to mental health treatment, which it entered after a civil

commitment hearing from which S.H. was absent. Because the court did not inquire into whether S.H. could have participated in her hearing by "reasonably feasible means," as the Fourteenth Amendment and A.R.S. § 36-539(C) require, we vacate the order and remand for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

¶2 On February 3, 2025, Jared Posey, a psychiatric mental health nurse practitioner, petitioned the superior court for an involuntary evaluation of S.H. His petition alleged S.H. was a danger to herself, gravely disabled, persistently or acutely disabled, and unwilling or unable to undergo a voluntary evaluation. He alleged S.H. was "out of touch with reality," and did not seem to understand where she was or why she was in a hospital. The court granted the petition and ordered S.H. to be detained and evaluated.

¶3 Dr. Reema Multani then evaluated S.H. She later petitioned the court to treat S.H. involuntarily, alleging S.H. was persistently or acutely disabled. In support of her petition, Dr. Multani attached an affidavit ascribing to S.H. a probable diagnosis of Bipolar I Disorder. Dr. Multani also attached the affidavit of Dr. Kamala Premkumar, who attested that she twice attempted to interview S.H., but that S.H. would not cooperate. Based on S.H.'s medical records and Posey's petition, Dr. Premkumar ascribed to S.H. a probable diagnosis of "Unspecified Schizophrenia Spectrum and Other Psychotic Disorders."

¶4 On February 12, 2025, the superior court held a hearing on Dr. Multani's petition. S.H. did not attend. While acknowledging S.H.'s absence, her counsel told the court that counsel was "unable to waive [S.H.'s] presence."

¶5 Dr. Multani testified about S.H.'s non-appearance, claiming that she had seen S.H. earlier that morning, and S.H. had been "uncooperative" and "not speaking at all." Dr. Multani further testified that S.H. had not said anything about attending the hearing and had "just stared" at Dr. Multani during their encounter. Dr. Multani opined that S.H. could not meaningfully participate in the hearing if she was brought there in restraints and that doing so would be detrimental to S.H.'s health.

¶6 Without identifying other means by which S.H. could participate in the hearing, or asking about their feasibility, the court found "by clear and convincing evidence that [S.H. was] unable to be present in court because of medical or psychiatric reasons." The court also found "it would be detrimental for [S.H.] to appear by any other reasonably feasible

means" and ultimately waived S.H.'s presence. The court's later minute entry stated S.H. "[did] not wish to be present," though no party stated that in the hearing.

¶7        The court proceeded with the hearing in S.H.'s absence. Amanda Johnson, a registered nurse assigned to care for S.H. in the week leading up to the hearing, and S.H.'s son, G.H., testified as acquaintance witnesses. The court also admitted the affidavits of Dr. Multani and Dr. Premkumar into evidence.

¶8        The court then found by clear and convincing evidence that S.H. suffered from a mental disorder and, as a result, was "persistently or acutely disabled and in need of psychiatric treatment." The court ordered S.H. to undergo a "combined inpatient and outpatient treatment program until she is no longer persistently or acutely disabled," but such treatment must not exceed 180 days in-treatment or 365 days total. S.H. timely appealed. We have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), 36-546.01.

## DISCUSSION

¶9        The parties dispute the standard of review to be applied in this matter. S.H. contends that the appropriate standard of review is *de novo* because this matter concerns "the application and interpretation of statutes as well as constitutional claims," including her federal due process claims. *In re MH2010-002637*, 228 Ariz. 74, 78 ¶ 13 (App. 2011). The State urges review for clear error, arguing that this case presents only factual issues. S.H. is correct. We review *de novo* S.H.'s request that we apply and interpret Arizona statutes and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

¶10        The Due Process Clause affords ordinary citizens the "right to be free from, and to obtain judicial relief for, unjustified intrusions on personal security." *Vitek v. Jones*, 445 U.S. 480, 491-92 (1980) (quoting *Ingraham v. Wright*, 430 U.S. 651, 673 (1977)); *see also* U.S. Const. amend. XIV § 1. "Involuntary commitment involves a significant curtailment of individual liberty." *In re MH2008-000867*, 225 Ariz. 178, 182 ¶ 13 (2010). Civil commitment proceedings must therefore afford individuals due process. *Id.* at 180 ¶ 4 (citing *Vitek*, 445 U.S. at 491-92).

¶11        The core of due process includes the right to a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). We employ a three-part test to determine whether a patient received due process in their civil commitment hearing. *MH2010-002637*, 228 Ariz. at 79

¶¶ 16-17 (applying the *Mathews* test in Arizona civil commitment case). These three parts are:

> *First*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally*, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335 (emphasis added); *MH2010-002637*, 228 Ariz. at 79 ¶ 17.

¶12        Our statutes assure the protection of these constitutional rights.  As a general matter, Arizona law requires the patient and their attorney be present at all civil commitment hearings.  A.R.S. § 36-539(B). There is, however, a limited exception.  Under A.R.S. § 36-539(C), a court may proceed with an involuntary treatment hearing in the patient's absence if there is clear and convincing evidence that "the patient, for medical or psychiatric reasons, is unable to be present at the hearing and cannot appear by other reasonably feasible means."  We next explain why S.H.'s absence from her civil commitment hearing did not comply with these standards.

> **Proceeding With the Civil Commitment Hearing Without Inquiring as to Alternative Means for S.H.'s Appearance Violated S.H.'s Rights.**

¶13        S.H. argues the superior court deprived her of due process by proceeding with the hearing without inquiring into whether S.H. could have participated remotely.  S.H. relies on *MH2010-002637*.  *See* 228 Ariz. at 81 ¶ 25.  There, a mental health patient diagnosed with schizophrenia could not attend a hearing about subjecting him to involuntary treatment because he was in medical isolation and at risk of contracting an infection if he were exposed to persons outside his medical and social work team.  *Id.* at 77 ¶ 5. The superior court held the hearing in the patient's absence without considering whether they could have participated by remote means, and ordered the patient to submit to involuntary treatment.  *Id.* at 77 ¶¶ 5-11.

¶14        We reversed, because both A.R.S. § 36-539(C) and the Due Process Clause bar the superior court from conducting an involuntary mental health treatment hearing in the absence of the person facing involuntary treatment "without first establishing that [the person] could not appear through alternative means."  *Id.* at 78 ¶ 15.  As we explained, all

three factors in the *Mathews* test make this so. The first factor weighs in the patient's favor: the patient's "liberty can be massively curtailed through civil commitment," which establishes a significant private interest. *Id.* at 79 ¶ 18. The second factor weighs in the patient's favor because when a patient is absent from a civil commitment hearing, "the patient is no longer afforded the opportunity to be heard personally and possibly observed by the court, which participation might assist the court in determining the alleged need for court-ordered mental health treatment." *Id.* at 80 ¶ 20. The third factor likewise weighs in the patient's favor: "we are hard pressed to find any government interest in precluding a patient from appearing telephonically or remotely or in not requiring a trial court to simply inquire as to such an appearance." *Id.* at 80 ¶ 22.

¶15 These reasons apply with equal force today. The court's order represents a "massive[] curtail[ment]" of S.H.'s liberty. *Id.* at 79 ¶ 18. Likewise, if S.H. appeared remotely by video or phone, allowing the court to observe and hear her, the court may have been aided in assessing the need for her treatment. *Id.* at 80 ¶ 20. Finally, there is no government interest in precluding S.H.'s participation, and there was no meaningful burden in merely inquiring as to whether she wished to appear. *Id.* at 80 ¶ 22. We thus reiterate our prior holding that on these facts, the superior court has a duty, arising under both the United States Constitution and Arizona statutory law, to inquire into whether S.H. could have participated in her civil commitment hearing by other reasonable means. *See* A.R.S. § 36-539(C); *MH2010-002637*, 228 Ariz. at 76 ¶ 1; *see also In re Commitment of Alleged Mentally Disordered Pers.*, 181 Ariz. 290, 293 (1995) ("Because such proceedings may result in a serious deprivation of liberty, however, the statutory requirements must be strictly adhered to.").

¶16 Finally, while the court's minute entry stated S.H. "[did] not wish to be present" at the hearing, nothing in the hearing transcript supports this statement, and no party argues for affirmance on this basis.

## CONCLUSION

**¶17**        We vacate the court's treatment order and remand for further proceedings.  On remand, the superior court should consider whether S.H. could have attended the hearing through alternative means.  If she could have, the court cannot issue a further treatment order in reliance on evidence from the hearing.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:            JR