NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE: MH 2025-004813

No. 1 CA-MH 25-0147

FILED 02-09-2026

Appeal from the Superior Court in Maricopa County
No. MH2025-004813
The Honorable Nicolas B. Hoskins, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Robert Shipman, Lindsay Ficklin
*Counsel for Appellant*

Maricopa County Attorney's Office, Phoenix
By Joseph J. Branco, Sean M. Moore, Caitlyn T. Mitchell
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Andrew J. Becke and Judge Kent E. Cattani joined.

**T H U M M A,** Judge:

¶1 J.M. appeals from an order finding him persistently or acutely disabled and committing him to inpatient and outpatient mental health treatment. *See* Ariz. Rev. Stat. (A.R.S.) § 36-540 (2026).[1] J.M. argues a written outpatient treatment plan failed to comply with A.R.S. § 36-540.01(B) and that his due process rights were violated because he was not given notice that electroconvulsive therapy would be used. Because J.M. has shown no error, the commitment order is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2 J.M. has been subject to court-ordered mental health treatment for several years, having been hospitalized for nearly two years. On May 14, 2025, Dr. Carlos Diaz filed a petition seeking an evaluation of J.M. *See* A.R.S. § 36-523. The superior court issued an order appointing an attorney to represent J.M. and directing that J.M. be evaluated. *See* A.R.S. § 36-529(A).

¶3 Doctors Raphael Golebiowski and Kesley Pike evaluated J.M. and concluded he was suffering from a severe mental disorder requiring court-ordered treatment. On May 19, 2025, Dr. Pike filed a petition for court-ordered treatment, alleging J.M. was persistently or acutely disabled and unable or unwilling to accept treatment voluntarily. *See* A.R.S. § 36-540(A)(2) & (3). As required by statute, the petition attached affidavits from Drs. Golebiowski and Pike. *See* A.R.S. § 36-533(B). Dr. Golebiowski's affidavit disclosed that J.M. "is currently receiving electroconvulsive therapy (ECT) secondary to limited response to pharmacological treatment."[2] He noted J.M. "has a history of multiple prior court ordered treatments," tracing back to 2018. The petition sought an order for a combination of inpatient and outpatient mental health treatment. *See* A.R.S.

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

[2] ECT involves "passing a small current of electricity through the brain of the patient in order to induce a grand mal type of convulsion. . . . In competent hands, ECT is usually regarded as a safe and painless therapy, and it has a higher cure rate than medication." Richard J. Kohlman, *Medical Malpractice: Electroconvulsive Therapy*, 44 AM. JUR. PROOF OF FACTS 2d 499 §§ 1 & 2 (2025) (footnotes omitted).

§ 36-540(A)(2). Dr. Pike later filed an outpatient treatment plan to be initiated after J.M. "no longer require[d] continued inpatient hospitalization." *See* A.R.S. §§ 36-540(C)(2) & -540.01(B).

¶4        On May 23, 2025, the court held an evidentiary hearing on the petition. The parties stipulated to the admission of the Pike and Golebiowski affidavits and other documents. Two other witnesses testified to their observations of J.M. Although given an opportunity to cross-examine those witnesses, J.M.'s counsel asked no questions. J.M. was afforded an opportunity to address the court, and he did so.

¶5        J.M. objected to ECT, arguing the outpatient treatment plan did not disclose its use, and that it could only be used if it was listed in that plan and specifically approved by the court. J.M. argued further briefing was needed before the court could order ECT treatment. The court stated it would "retain jurisdiction to consider briefing" on the ECT issue.

¶6        After J.M. made additional statements to the court, in closing argument, J.M.'s attorney stated J.M. "doesn't feel like he needs to be in inpatient any longer." The court then found, by clear and convincing evidence, that J.M. is persistently and acutely disabled due to a mental disorder and unwilling or unable to accept voluntary treatment. The court ordered combined inpatient and outpatient treatment for no more than 365 days, with inpatient treatment not to exceed 180 days. J.M. timely filed a notice of appeal from that May 2025 commitment order.

¶7        Meanwhile, the parties filed briefs discussing whether ECT had to be disclosed in the outpatient treatment plan. In July 2025, the court found no authority supporting the argument that ECT must be disclosed or approved by the court before it is used. J.M. did not appeal from that ruling. This court has jurisdiction over J.M.'s timely appeal challenging the May 2025 commitment order under A.R.S. §§ 36-546.01 and 12-2101(A)(10).

## DISCUSSION

### I.    Appellate Jurisdiction.

¶8        Given J.M.'s timely appeal, this court has appellate jurisdiction to review the May 2025 commitment order. *See* A.R.S. § 36-546.01 ("An order for court ordered treatment may be reviewed by appeal to the court of appeals as prescribed in the Arizona rules of civil procedure or by special action. Such appeal or special action shall be entitled to preference."). J.M.'s briefing on appeal, however, focuses on matters

occurring after the May 2025 commitment order, including the July 2025 ruling on the outpatient treatment plan. J.M., however, did not appeal from that July 2025 ruling. Therefore, this court lacks appellate jurisdiction to consider the July 2025 ruling, or arguments raised in superior court after the May 2025 commitment order.

## II. J.M. Has Shown No Error in the May 2025 Commitment Order.

**¶9** The superior court's findings of fact will be affirmed unless clearly erroneous, viewing the facts in a light most favorable to sustaining those findings. *See In re MH 2008-001188*, 221 Ariz. 177, 179 ¶ 14 (App. 2009) (citing cases). Issues of law, by contrast, are reviewed de novo. *See In re MH2010-002637*, 228 Ariz. 74, 78 ¶ 13 (App. 2011) (citing cases). Particularly given these proceedings can result in a deprivation of an individual's liberty interests, the record must show "complete compliance with each statute's requirements." *In re Pima Cnty. Mental Health No. 20200860221*, 255 Ariz. 519, 524 ¶¶ 10-11 (2023). In doing so, the court looks to the "the plain meaning of the words the legislature chose to use, viewed in their broader statutory context." *In re Drummond*, 257 Ariz. 15, 18 ¶ 5 (2024) (citation omitted). Courts "'will not inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions.'" *In re M.N.*, 259 Ariz. 120, 141 ¶ 28 (2025) (citation omitted).

**¶10** J.M. does not directly challenge the validity of the May 2025 commitment order. At the evidentiary hearing, the court received, without objection, the Pike and Golebiowski affidavits and other documents, heard testimony from two witnesses who had observed J.M., heard from J.M. himself and heard argument from counsel. The court then found, by clear and convincing evidence, that as a result of a mental disorder, J.M. is persistently or acutely disabled, needs psychiatric treatment and is unwilling or unable to accept voluntary treatment, and that there were no appropriate and available alternatives short of court-ordered treatment. The resulting commitment order directs that J.M. undergo a program of combined inpatient treatment (not to exceed 180 days) and outpatient treatment (in total, not to exceed 365 days), unless he is otherwise discharged earlier. From the record provided, all of these actions are factually supported and completely comply with statutory requirements. *See* A.R.S. §§ 36-539, -540.

## III. J.M. Has Not Shown that the Outpatient Treatment Plan Failed to Comply with A.R.S. § 36-540.01(B).

4

¶11　　　　J.M.'s primary argument is that the outpatient treatment plan did not comply with A.R.S. § 36-540.01(B). Where, as here, a commitment order directs "combined inpatient and outpatient treatment," the court must be presented with and approve "a written treatment plan that conforms with" A.R.S. § 36-540.01(B). *See* A.R.S. § 36-540(C)(2). The record shows the superior court was presented with and approved a written treatment plan for J.M.[3]

¶12　　　　The petition disclosed that ECT was being used as a treatment modality for J.M. The outpatient treatment plan, however, does not mention ECT. Although he argues that omission was error, J.M. has not shown that the outpatient treatment plan was required to mention ECT or any other specific treatment modality.

¶13　　　　An outpatient treatment plan must include five categories of information. *See* A.R.S. § 36-540.01(B)(1) – (5). J.M. does not claim error based on the first three categories, which address a patient's ability to meet basic needs, living circumstances for outpatient treatment, and identifying who will supervise outpatient treatment. *See* A.R.S. § 36-540.01(B)(1) – (3). J.M. argues, however, that the two remaining categories required that possible ECT use be disclosed in the outpatient treatment plan. Specifically, J.M. argues that, in failing to mention ECT, the outpatient treatment plan failed to provide the following required categories of information:

> 4.　　The conditions for continued outpatient treatment, which may require periodic reporting, continuation of medication and submission to testing, and may restrict travel, consumption of spirituous liquor and drugs, associations with others and incurrence of debts and obligations or such other reasonable conditions as the medical director may specify.
>
> 5.　　Any other provisions that the medical director or the court believes are necessary to protect the well-being of the patient and the public.

A.R.S. § 36-540.01(B)(4) & (5).

---

[3] The court ordered that the plan be followed, including requiring J.M. to "follow a prescribed outpatient treatment plan," negating J.M.'s suggestion that it was not approved by the court.

¶14 The outpatient treatment plan requires J.M. to take prescribed medications, adding J.M. "currently requires treatment with psychiatric medication . . . continuing after discharge to the community" and listing several classes of medication. It does not list any specific medication or treatment modality, but A.R.S. § 36-540.01(B)(4) does not require that specificity. This lack of required specificity reflects the function of an outpatient treatment plan, which addresses "conditional outpatient treatment" in the future, and applies only after the medical director determines the patient no longer requires continuous inpatient treatment. *See* A.R.S. § 36-540.01(B) & (A)(1). Even when an outpatient treatment plan becomes operative, this patient-focused requirement addresses the patient's "conditions for continued outpatient treatment." A.R.S. § 36-540.01(B)(4). Indeed, outpatient treatment can be rescinded, and the individual returned to inpatient treatment, if "the patient has failed to comply with a term of the outpatient treatment plan." A.R.S. § 36-540.01(J). For these reasons, it is no surprise that this statutory requirement for an outpatient treatment plan does not require listing specific medications or treatment modalities such as ECT. And J.M. has not shown any basis to conclude that the medical director or the court believed it was necessary to specify ECT "to protect the well-being of the patient and the public." A.R.S. § 36-540.01(B)(5).

¶15 During oral argument before this court, J.M. argued that ECT is a "different type of treatment," meaning the statute should be read to require disclosure of intended ECT use in an outpatient treatment plan. The statute, however, does not require such disclosure and the Legislature knows how to require disclosure and court approval when it wants to do so. Indeed, treatment under a commitment order "shall not include psychosurgery, lobotomy or any other brain surgery" without both prior consent "and an order of the superior court." A.R.S. § 36-540(L). Short of that, however, the statute does not require disclosure or approval of treatment modalities, including ECT, and this court will not imply such a requirement in the statute. *See In re M.N.*, 259 Ariz. at 141 ¶ 28 (citing cases). For these reasons, J.M.'s argument that the written outpatient treatment plan did not comply with A.R.S. § 36-540.01(B) fails.[4]

**IV. J.M. Has Not Shown There is a Due Process Right to Disclosure of ECT.**

---

[4] J.M.'s argument that ECT could be administered on an outpatient basis but, as to J.M., was being administered on an inpatient basis, does not change this conclusion.

¶16        J.M.'s remaining argument is based on the thought that ECT use was not disclosed before the May 2025 commitment order. Although J.M. asserts that was fundamental error, the argument fails because it is not factually supported regardless of the standard of review. The petition disclosed that ECT was being used as a treatment modality for J.M. before the evidentiary hearing on the petition and before the court issued the May 2025 commitment order. Accordingly, J.M. had notice of ECT as a treatment modality before the May 2025 commitment order.

¶17        J.M.'s remaining due process arguments fail for the same reason. Because he was given notice of ECT use, J.M. was not (as he argues on appeal) "deprived of a full opportunity to exercise his right to an independent evaluator" under A.R.S. § 36-538. In fact, even with notice of ECT use, J.M. waived the right to obtain an independent evaluator. Nor has J.M. shown that he was "deprived . . . of making an informed choice about whether, and how, to cross-examine the hospital's witnesses." J.M. waived any objections to the doctors' affidavits, including waiving the right to have them testify and to cross-examine them, instead stipulating to the admission of the affidavits. Likewise, J.M. waived the right to cross-examine the two observation witnesses who testified at the evidentiary hearing. Further, J.M. has not shown that he was "denied the opportunity to make an informed decision about whether to personally testify." And, although not formally testifying, J.M. addressed the court directly during the hearing on more than one occasion.

¶18        J.M. also argues he was denied effective assistance of counsel. To the extent this argument is based on the claim that ECT was not disclosed, it is not factually supported. Apart from the notice issue, J.M. had a right to effective assistance of counsel, requiring counsel to, at a minimum, comply with the duties set forth in A.R.S. § 36-537(B). *See In re MH2010-002637*, 228 Ariz. at 81-82 ¶¶ 28-31. J.M. has not shown a deprivation of that right, or that he was otherwise deprived of effective assistance of counsel. *See* A.R.S. § 36-537(B).

**CONCLUSION**

¶19        The commitment order is affirmed.

